[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR DETERMINATION
CT Page 15990
PROCEDURAL HISTORY
Before the court is the plaintiffs' motion for determination pursuant to General Statutes § 52-235d (b)(2), (3) and (4). The parties had agreed to mediate the issues in the present case before the Honorable F. Owen Eagan ("Mediator"). The mediation sessions were held on April 12, 2001, and May 23, 2001. The plaintiffs assert that a settlement agreement was reached. The defendant, however, contends that no agreement was reached. The issue here is what, if any, disclosure of the results of the mediation should be made under General Statutes § 52-235d.
DISCUSSION
General Statutes § 52-235d (b) provides in pertinent part: "[e]xcept as provided in this section, by agreement of the parties or in furtherance of settlement discussions . . . an attorney for one of the parties . . . shall not voluntarily disclose . . . or be required to disclose any oral or written communication received or obtained during the course of a mediation, unless (1) each of the parties agrees in writing to such disclosure, (2) the disclosure is necessary to enforce a written agreement that came out of mediation, (3) the disclosure is required by statute or regulation, or by any court, after notice to all parties to the mediation, or (4) the disclosure is required as a result of circumstances in which a court finds that the interest of justice outweighs the need for confidentiality. . . ." General Statutes §52-235d (b).
In his opposition memorandum, the defendant argues that § 52-235d
provides that no oral or written communication received or obtained during the course of a mediation should be subject to disclosure. The defendant asserts a number of reasons why the communications made and materials produced in the mediation should not be disclosed. First, he maintains that there is a sound reason and policy consideration to protect the "privilege" of those communications and materials produced during the course of a mediation. The defendant argues that this policy extends to all forms of settlement negotiations during the course of litigation.
In response, the plaintiffs concede that public policy interest in the pretrial settlement of claims is well established. They contend, however, that public policy is not served by allowing litigants to freely breach settlement agreements knowing that evidence demonstrating the existence of a settlement agreement is inadmissible. It follows, the plaintiffs argue, that the communications should be disclosed for the purpose of determining whether the parties have entered into an enforceable CT Page 15991 settlement agreement. They claim that the evidence is needed in a procedure to enforce the parties' contractual agreement to forego trial.
The defendant's second argument for not allowing the disclosure of the communications and materials of the mediation is that the plaintiffs have failed to set forth reasons why the exceptions to § 52-235d would warrant the disclosure of the evidence from the mediation. In response, the plaintiffs assert that § 52-235d (b)(4), states that the court can require disclosure of the communications from a mediation if it finds that the "interest of justice outweighs the need for confidentiality."
The defendant's third argument for not allowing disclosure of the communications and materials of the mediation is that the principles of maintaining the integrity and confidentiality of the mediation process far outweigh the plaintiffs' desire to plod though evidence and testimony during the mediation to ascertain what was said or agreed to at the mediation. The defendant asserts that allowing the disclosure of discussion from mediations would certainly have a chilling effect on the entire mediation process. The plaintiffs, in response, assert that what is necessary here is to give effect to an agreement they allege resulted from the mediation and allowing a mediator to testify as to the existence of an enforceable settlement agreement reached at the mediation would not hinder the mediation process.
Lastly, the defendant maintains that the parties' agreement with the mediation services expressly bars the admission of evidence. The plaintiffs contend that the agreement provides that "all statements made or documents submitted . . . are . . . for `settlement purposes only.'" They argue that such statements and documents they seek to disclose are being used for settlement purposes — to enforce the settlement reached at the mediation.
The court recognizes the importance of preserving the candidness of discussions that take place during a mediation and maintaining the integrity and confidentiality of the mediation process. On the other hand, it is equally important that the agreements reached during mediation are enforced, thereby, upholding the policy of judicial economy, the very reason mediation is encouraged. By allowing a party to breach a settlement agreement that may have been reached during a mediation because disclosure of communications and materials is not permissible would defeat the purpose behind the mediation process.
"The general rule that evidence of settlement negotiations is not admissible at trial is based upon the public policy of promoting the settlement of disputes." Jutkowitz v. Department of Health Services,220 Conn. 86, 97, 596 A.2d 374 (1991). The disclosure of communications CT Page 15992 from settlement negotiations at trial is not what is being asked of the court in this case. Instead, the court is being called upon to determine whether communications and materials from a mediation should be disclosed in order to determine whether an enforceable settlement agreement was reached at the mediation.
Here the plaintiffs are seeking to admit evidence from the mediation and other witnesses sufficient to prove that the defendant agreed to settle this case. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." Audubon Associates Ltd. Partnershipv. Barclay and Stubbs, 225 Conn. 804, 811, 626 A.2d 729 (1993). "Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes." Id., 812.
To resolve the issue before the court, the court must interpret § 52-532d. This court's interpretation of § 52-532d is a matter of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . "In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Citations omitted; internal quotation marks omitted.) Willoughby v. New Haven, 254 Conn. 404 410 ___ A.2d ___ (2000). If the language of the statute, the legislative history and the purpose of the statute are all ambiguous courts "follow the golden rule of statutory interpretation . . . that the legislature is presumed to have intended a reasonable just and constitutional result." (Citations omitted; internal quotation marks omitted.) Sanzone v. Boardof Police Commission, 219 Conn. 179, 187, 592 A.2d 912 (1991). "It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." (Citations omitted; internal quotation marks omitted.) Willoughby v. New Haven, supra, 254 Conn. 422. "[I]t is a well established principle that statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant. . . ." Bridgeport Hospital v. Commission on HumanRights and Opportunities, 232 Conn. 91, 100-101, 653 A.2d 782 (1995).
The case law regarding General Statutes § 52-235d is sparse. Moreover, the legislative history does not aid the court. The legislative CT Page 15993 history merely indicates the importance of alternative dispute resolution in our judicial system and that confidentiality during alternative dispute resolution is of ultimate importance. While the purpose behind the statute is set forth in the legislative history, the purpose or reasoning behind the enactment of the exceptions provided in § 52-235d
(b)(1), (2), (3) and (4) is not discussed. Therefore, the court is left to review the intent of the legislature when it enacted these exceptions.
In reviewing § 52-235d the court turns to General Statutes §46b-53a, which governs the mediation program for persons filing for dissolution of marriage and the privileged communications made during such mediation. General Statutes § 46b-53a (b) provides in pertinent part: "[a]ll oral or written communications made by either party to the mediator or made between the parties in the presence of the mediator, while participating in the mediation program . . . are privileged and inadmissible as evidence in any court proceedings unless the parties otherwise agree." General Statutes § 46b-53a (b).
It is this court's opinion that if the legislature wanted to eliminate the disclosure of communications or materials received or obtained during mediation it would not have created the exceptions embodied in §52-235d (b)(1), (2), (3) and (4). Instead, it would have written the statute to reflect § 46b-53a and only allow for disclosure of communications in the event that the parties agree to such disclosure. In constructing § 52-235d the legislature must have considered situations that could arise in which disclosure of communications from a mediation is appropriate, otherwise, it would not have created the exceptions.
Here, if the court adopts the defendant's argument that the court should not allow disclosure of any communications made during the mediation, the exceptions set forth in § 52-235d (b)(1), (2), (3) and (4) would be rendered moot. The court declines to read the statute so as to render meaningless the exceptions set forth by the legislature in § 52-235d (b).
In this case, the plaintiffs are seeking to determine whether an agreement was reached during the mediation. One of the reasons why parties mediate is to preserve judicial economy. The court will allow for the interrogatories set out below to be submitted to the Mediator for the purpose of determining whether in the opinion of the Mediator the parties reached an agreement. Requesting a response from the Mediator here is not a violation of public policy.
Therefore, pursuant to § 52-235d (b)(4) the court finds, in the CT Page 15994 interest of justice, the need for the disclosure of relevant communications made during the mediation outweighs the parties' need for confidentiality in order to determine whether a settlement agreement was reached at the mediation.
The plaintiff's motion for determination is granted limited to the submission of the following interrogatories to the Honorable F. Owen Eagan:
 (1) Is it your understanding that the parties in the matter of Sharon Motor Lodge, Inc. et. Al. v. Allan Y. Tai mediated before you on April 12, 2001 and on May 23, 2001 reached an agreement ending their lawsuit. ____Yes ____No
(2) If the answer to question 1) is yes, what was your understanding as to the terms of the settlement agreement.
So ordered:
By The Court
Cremins, J.